CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 FEB 23  PM 4: 40

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAVIER YEBRA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-173 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR
## A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Petitioner JAVIER YEBRA filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 69th Judicial District Court of Moore County, Texas, for the offense of aggravated assault in *State v. Yebra*, Cause No. 4249. For the reasons set out hereafter, the United States Magistrate Judge is of the opinion petitioner's motion for leave to supplement (Dkt. 33) should be DENIED. Further, it is the recommendation of the undersigned that petitioner's application for federal habeas corpus relief be DENIED.

### I.
### FACTUAL AND PROCEDURAL BACKGROUND

In February 2009, petitioner was indicted in Moore County, Texas, for aggravated assault. Petitioner entered a plea of not guilty. After a trial, the jury returned a verdict of guilty and set YEBRA's punishment at fifty years in prison. The judgment was affirmed on appeal. *Yebra v. State*, No. 07-10-00008-CR, 2010 WL 3893684 (Tex. App. – Amarillo Oct. 5, 2010, *pet. ref'd*).

The Amarillo Court of Appeals summarized the facts of the case as follows:

Complainant, Darlene Flores, went with her roommate, Rosa Aguirre, to a bar in Cactus, Texas. While there, Flores met appellant. Flores bought him a beer, and the two played pool. During their interaction, appellant told her that if she "did him wrong that he had a knife." Flores and Aguirre left the bar at about 2:00 a.m. Though uninvited and unbeknownst, appellant followed them.

At this point, the details regarding the sequence of the night's events vary somewhat among the witnesses. Flores recalled going to her room to change clothes. Appellant, after having somehow gained entry to the house, tried to get into her room. Flores slammed the door to prevent him from doing so, changed clothes, and then went outside to talk to him. Appellant accused Flores of having stolen CDs from him. Appellant then attacked Flores. Flores remembered being on the ground as appellant was kicking and punching her. Flores had fallen to the ground near some beer bottles and picked up a number of these bottles and threw them at appellant. She also hit him in the head with a bottle as he continued hitting her. She got to her feet and ran around the car toward the house. She tried to get inside but Aguirre would not open the door because appellant had tried to punch her as well.

According to Flores, appellant again violently approached her. Flores presumed that it was during this stage of the altercation that appellant stabbed her although she was unaware of her stab wounds until later when she was inside receiving medical care from paramedics. Flores did not see a knife during any stage of the altercation. She testified that, as a result of the wounds, she had to go to the hospital. She testified that she underwent surgery and that once, during her approximately three-week stay in the hospital, she was transferred to ICU after she had stopped breathing. Flores admitted to having drunk a great deal that night and that her recollection of the night came only in "bits and pieces."

Aguirre testified that after she and Flores returned home, Flores and appellant left together in appellant's car, perhaps to search for more beer, and were gone for 30 to 45 minutes. When they returned, appellant came into the house but Aguirre directed him to go outside. He complied and waited outside for Flores for a little while then came back in the house and tried to get in the bedroom. Aguirre again told him to leave the house. Appellant went back outside and waited on the porch to talk to Flores.

Flores joined him while Aguirre remained inside. Aguirre heard Flores and appellant arguing. She looked outside and saw appellant punching Flores by the front door; she did not see him stab her. Aguirre moved to go out and assist Flores but was denied exit by appellant deliberately pushing the door closed. Appellant also tried to punch Aguirre, causing damage to the screen door. She

explained that only appellant and Flores were outside the house that night. Appellant eventually left, and Aguirre helped Flores inside and noticed that she was bleeding "bad."

. . . Flores and Aguirre provided their foregoing accounts of the night. Aguirre's fifteen-year-old twin children both testified that only appellant and Flores were outside that night. Neither saw appellant stab Flores. The responding officer testified that a brief search of the scene yielded no knife, and no knife was found on appellant.

No one disputes that there was an altercation between appellant and Flores. Likewise, it is undisputed that Flores sustained serious wounds that night. According to Dr. Thomas Parsons, a forensic pathologist who examined photographs of the wounds and a medical report of a CT scan, the wounds "were most likely caused by a knife or knife-like object." He described the wound characteristics that led him to that conclusion and explained the risks posed by the fact that Flores's liver was lacerated.

Appellant did not testify. In his defense, he recalled Aguirre's daughter who testified that, before Flores went outside to talk to appellant, Flores said to her boyfriend on the phone that she was going outside to "kick his A."

*Id.* at *1-2.

Petitioner filed a state habeas corpus application on June 18, 2012, which had been signed on June 13, 2012. The state habeas corpus application was denied without written order on February 13, 2013. *Ex parte Yebra*, No. WR-78,088-01 (Tex. Crim. App. February 13, 2013). Petitioner then filed this federal Petition for a Writ of Habeas Corpus on August 13, 2012, which petitioner states he placed in the prison mail system on August 8, 2012.

On November 25, 2013, petitioner filed "Petitioner's Motion Requesting Leave of Court for Filing His Supplemental Pleading to His Federal Habeas Petition – with Brief in Support." (Dkt. 33). By this pleading, petitioner sought to raise a claim of ineffective assistance of counsel due to trial counsel's failure to request the trial court instruct the jury on the lesser-included offenses of simple assault and deadly conduct. The motion was denied on December 19, 2013.

(Dkt. 35).  Petitioner objected, (Dkt. 37), and the United States District Judge overruled

petitioner's objections, except for the issue regarding *Trevino v. Thaler*, 569 U.S. ___, 133 S.Ct.

1911, 185 L.Ed.2d 1044 (2013), as related to the lesser-included offense claim, which was

remanded to the United States Magistrate Judge for further consideration.

II.

PETITIONER'S ALLEGATIONS

Petitioner appears to contend respondent is holding him in violation of the Constitution

and laws of the United States for the following reasons:

1.       The state did not prove the elements of the offense.

2.       Petitioner received ineffective assistance of counsel, because counsel:

(1)      failed to consult with a forensic pathologist;

(2)      failed to object to hospital and medical records and to a recording of a 911
call;

(3)      failed to object to Dr. Parsons's use of photographs to determine the nature
of the wounds;

(4)      failed to object to Dr. Parsons's speculation that the wounds were most
likely caused by a knife or a knife-like object;

(5)      failed to introduce a prior recorded statement of the alleged victim;

(6)      failed to file a motion to suppress petitioner's statement to police and
failed to review the recorded statement;

(7)      failed to object to evidence of flight;

(8)      failed to object to Dr. Parsons's lack of qualifications;

(9)      failed to object that the prosecutor took evidence home after trial began
and that the prosecutor tampered with a videotape.

3.       A forensic pathologist was not appointed for petitioner.

4.      The introduction into evidence of records, reports, videotapes, and a recording of a 911 call violated the Confrontation Clause.

5.      The trial court did not permit defense counsel to impeach the alleged victim.

6.      Petitioner's rights under the Confrontation Clause were violated by the failure to use the alleged victim's recorded statement.

7.      Petitioner's right to due process was violated because Dr. Parsons's opinion testimony was based on suspicion, speculation, and conjecture.

8.      Petitioner's right to due process was violated because Dr. Parsons was not qualified to testify about injuries based on photographs.

9.      Petitioner's right to due process was violated because defense counsel did not move to strike Dr. Parsons's testimony.

10.     Petitioner received ineffective assistance of appellate counsel because counsel did not raise an appellate issue regarding the attempt to impeach the alleged victim.

11.     The cumulative effect of the errors requires that the conviction be set aside.

12.     Petitioner's right to due process was violated by the amendment of the indictment.

13.     The evidence was factually and legally insufficient.

Claim in Motion to Supplement:

Petitioner received ineffective assistance of counsel due to trial counsel's failure to request a jury instruction on the lesser-included offenses of assault and deadly conduct.

### III.
### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, a petitioner may not obtain

habeas corpus relief in federal court with respect to any claim adjudicated on the merits in the

state court proceedings unless the adjudication of the claim resulted in a decision contrary to or

involved an unreasonable application of clearly established federal constitutional law or resulted

in a decision based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings.  28 U.S.C. § 2254(d).

The Texas Court of Criminal Appeals heard and adjudicated, on the merits, the claims petitioner Yebra presents in his federal habeas corpus petition when it denied petitioner's application for state habeas relief without a written order.  *Ex parte Yebra*, No. WR-78,088-01; *see Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect.  Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002).

Not only has petitioner failed to meet this burden under the AEDPA, but a review of petitioner's claims confirms those claims are without merit.  The petition should be denied.

IV.
## MERITS OF PETITIONER'S ALLEGATIONS

### A. Sufficiency of the Evidence

In grounds 1 and 13, petitioner contends the State did not prove the elements of the offense and that the evidence was factually and legally insufficient.  Petitioner was charged with aggravated assault by cutting or stabbing Darlene Flores with a knife or some unknown object.

Respondent argues petitioner's claims are unexhausted and procedurally defaulted.  On direct appeal petitioner raised a claim that there was factually insufficient evidence to support the verdict.  The Amarillo Court of Appeals rejected that claim and held the evidence was factually

sufficient.[1]  According to respondent, petitioner also raised his claim of factual insufficiency in his petition for discretionary review.  Thus, respondent argues, petitioner did not exhaust his claim of legal insufficiency of the evidence on appeal.  While petitioner did raise a claim of legal insufficiency of the evidence in his state habeas corpus application, respondent points out a claim of insufficient evidence is not cognizable on state habeas.  *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994).  When the Texas Court of Criminal Appeals denies a state habeas corpus application in which a sufficiency of the evidence claim is raised, the state court's denial is based on a state procedural ground, since the claim is not cognizable on habeas corpus. *Register v. Thaler*, 681 F.3d 623, 626 n.8, 628 (5th Cir. 2012).  Respondent asserts the legal sufficiency claims are unexhausted and procedurally defaulted.  Petitioner did not raise those claims on appeal and they were not properly presented in his state writ application because he was procedurally barred from raising it in state habeas corpus.

A United States District Court has held that a claim of factual insufficiency under state law presented in state court does not exhaust a claim of insufficient evidence under *Jackson v. Virginia. See Montez v. Thaler*, No. SA-09-CV-805, 2010 WL 2058392 at *5 (W.D. Tex. August 2, 2010); *see also Gonzales v. Thaler*, No. 3:11-CV-2613, 2013 WL 2443381 at *6 (N.D. Tex. June 5, 2013) (it is not clear whether a claim in state court about factual insufficiency of the evidence exhausts a federal constitutional claim of insufficient evidence).  It is not necessary,

---

[1] The Texas Court of Criminal Appeals has since held that a claim of factually insufficiency under *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), is no longer recognized, and state courts would only consider the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010).

however, for this Court to decide whether the sufficiency of evidence claims are exhausted.[2]  The

sufficiency of evidence claims lack merit, and those claims may be denied on the merits even if

they are unexhausted.  *See* 28 U.S.C. § 2254(b)(2).

In determining whether the evidence is sufficient, the test is "whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S.

307, 319 (1979).  The Amarillo Court of Appeals addressed petitioner's factual sufficiency of the

evidence claims as follows:

### Deadly weapon finding

Appellant maintains that Flores's wounds could have been inflicted
accidentally or by a third party, though no third party was identified.  Appellant
relies on the following evidence or lack of evidence to support his contention that
the evidence is factually insufficient to support the deadly weapon finding: (1) no
testimony that appellant was seen in possession of a knife, (2) no knife recovered
from scene or from appellant, (3) no testimony from witnesses that anyone saw
appellant stab Flores, (4) witness testimony limited to seeing appellant punch or
hit Flores, (5) Flores's lack of recollection of being stabbed, (6) inconsistencies
between Flores's testimony and statement to police, (7) evidence of broken beer
bottles on the ground during admitted altercation in which Flores was on the
ground, and (8) the fact that witnesses to the altercation never went outside to see
if another person was present.

Based on the "possibilities" posed by the evidence,[FN2] appellant urges this
Court to find the evidence factually insufficient.  While we do note that the state
of the evidence is such that a number of things could have happened that night, we
are not charged with determining the plausibility of alternate theories.  While the
existence of other reasonable hypotheses may be relevant to our review of the
factual sufficiency of the evidence, it is not determinative.  *See Wilson v. State,* 7
S.W.3d 136, 141 (Tex. Crim. App. 1999).  In fact, we "may not find the evidence
to be factually insufficient merely because there are 'reasonably equal competing
theories of causation.'" *Steadman v. State,* 280 S.W.3d 242, 247 (Tex. Crim.

---

[2]  This Court notes that the Amarillo Court of Appeals began its analysis with the assumption that the
evidence was legally sufficient under *Jackson v. Virginia.*

App. 2009) (quoting *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001)). The evidence cited by appellant as supporting alternative theories of how Flores sustained her injuries do not form an objective basis demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. *See Laster* [*v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)].

> FN2. To the extent that appellant advances his argument in the "reasonable alternative hypothesis" paradigm, we note that such construct was overruled in *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991).

Turning now to our review of the evidence supporting the State's allegations rather than alternative theories, we note that the State need not introduce the object into evidence for the trier of fact to find that such object was a deadly weapon. *See Morales v. State*, 633 S.W.2d 866 (Tex. Crim. App. 1982). Even without a description of the weapon, the victim's injuries can, by themselves, be a sufficient basis for inferring that an appellant used a deadly weapon. *See Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008); *see also Morales*, 633 S.W.2d at 868-69 (photograph of deep slash requiring stitches and running from below victim's earlobe across her cheek to the corner of her mouth was sufficient to show that a deadly weapon was used).

Here, there is evidence that Flores suffered five stab wounds that required surgery and a three-week stay in the hospital. At one point, she was transferred to ICU when she stopped breathing. Further, Dr. Parsons, an experienced forensic pathologist, testified that he examined photographs of the wounds and a medical report of a CT scan performed on Flores. In his opinion and based on his review of the photographs and medical report, Flores's wounds "were most likely caused by a knife or knife-like object." He detailed how the elasticity of the skin generally causes such wounds to have the "bowed" appearance visible in the photographs. He testified, too, that the wounds displayed characteristics of having been inflicted by an object having one sharp edge. He also explained how the linear cuts on the shirt Flores was wearing were also consistent with having been caused by a knife or knife-like object. He testified that Flores's injuries could have caused death. One of the wounds lacerated her liver, which required surgery and posed a serious risk of severe blood loss and infection within the abdominal wall.

When presented with the theory that a broken bottle caused Flores's injuries, Parsons responded that injuries inflicted by broken bottles "typically have a fairly pronounced arc of circumference" not present in Flores's wounds. While he acknowledged that it was theoretically possible that the wounds were inflicted by a piece of a bottle, if a very specifically-shaped shard of glass was used, Parsons generally discounted the theory. Though there was no evidence identifying the instrument or object used, Parsons specifically testified that a

"deadly weapon" caused Flores's injuries. *See Tucker*, 274 S.W.3d at 692. So, based on Flores's account of her injuries, medical records, photographs depicting her wounds and blood loss, and expert medical testimony regarding the nature and source of the wounds, the jury could have reasonably found that appellant used a deadly weapon.

The absence of evidence specifically identifying or describing the weapon used does not render the foregoing evidence of a deadly weapon so weak that the verdict is clearly wrong or manifestly unjust. *See Laster*, 275 S.W.3d at 518. The evidence supporting the deadly weapon finding is factually sufficient. We overrule this issue.

*Intent*

In a less-developed contention, appellant maintains that the evidence is insufficient to show that he acted with the requisite intent. It is an offense to intentionally, knowingly, or recklessly cause injury to another. Tex. Penal Code Ann. § 22.01(a)(1). Again, appellant points to the possibility that Flores's wounds were inflicted accidentally or by a third party. The State has not specifically addressed the contentions regarding intent by brief or by oral argument.

The only evidence of appellant's intent, he argues, are Flores's wounds. However, there is also evidence that the two were arguing and cursing outside before the altercation and that appellant hit and punched Flores and chased her around the car. Further, Flores testified that appellant accused her of stealing from him. Intent may be inferred from the circumstances surrounding the act. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Factually sufficient evidence supports the finding that appellant acted with the requisite intent. We overrule this issue.

*Yebra*, 2010 WL 3893684 at *3-4.

Petitioner argues Dr. Parsons's testimony and the hospital records should not be considered. He claims their admission into evidence violated his constitutional rights. Petitioner's claim of error, however, does not operate to cause that evidence to be excluded from a sufficiency of evidence review. All the evidence admitted at trial is considered when evaluating the sufficiency of the evidence. *United States v. Miller*, 146 F.3d 274, 280 (5th Cir. 1998); *United States v. Blocker*, 104 F.3d 720, 730 (5th Cir. 1997).

Petitioner points out no one testified he had a knife, no one testified he stabbed Flores, and no knife was found. He asserts Dr. Parsons testified Flores's injuries could have been caused by a glass fragment from a broken bottle. Specifically, petitioner contends the evidence tended to establish that Flores injured herself while laying on the ground and rolling over fragments and shards of broken beer bottles.

Dr. Parsons testified Flores's "wounds were most likely caused by a knife or knife-like object." Document 18-2 (Reporter's Record Vol. 6, p. 14). On cross-examination, Dr. Parsons testified as follows:

> Q:   . . . Could it have been a shard of glass from a broken beer bottle [that caused the wounds]? That would be pretty consistent with a straight object as you testified when you were looking at the shirt when you were inspecting the shirt.
>
> A:   The beer bottles typically have a fairly pronounced arc of circumference.
>
> Q:   Okay.
>
> A:   So I would expect that that would leave a little bit more of an arc if it were actually a shard of beer bottle.
>
> Q:   Okay. When we talked several months ago, you did say it could possibly be a beer bottle, correct?
>
> A:   It could be a fragment of bottle if it was the correct shape.
>
> Q:   Okay.
>
> A:   But the — again, it would have to be a very specific long, fairly narrow shape to limit the amount of arc of circumference so that you would get more of an insertion and cutting rather than purely a stab wound.
>
> *   *   *
>
> Q:   . . . Isn't it correct that it possibly could be a fragment of glass or something from a beer bottle?

A:      Theoretically, yes.

(Dkt. 18-2) (Reporter's Record Vol. 6, pp. 29-30).

Although Dr. Parsons recognized the theoretical possibility that the wounds could have been caused by a long, narrow shard of glass, he testified the wounds were most likely caused by a knife or knife-like object.  There was no evidence there were broken beer bottles and that Flores rolled over broken beer bottles.  There was no evidence she rolled over a specifically shaped shard of glass five times so as to cause her five wounds, including one stabbing wound that penetrated to and injured her liver.  Petitioner punched and kicked Flores, and he chased her around a car.  Earlier in the evening, petitioner warned Flores he had a knife.  Although none of the witnesses saw petitioner stab Flores with a knife, they witnessed the outside events from inside the house.  Flores did not see a knife, but she did not notice she had been stabbed until she re-entered the house after the altercation.  She also admitted to having been intoxicated.  Additionally, when petitioner was first stopped by police officer Kristi King, he said he was stabbed by a female, then he said he was stabbed by a man.  He said there might be another person on the scene with a knife.  (Dkt. 18-1) (Reporter's Record Vol. 5, pp. 119, 121).  Those comments suggested he was aware there was a knife involved.  The evidence was sufficient to support the conviction.  The state court's adjudication of this claim did not result in a decision which was contrary to or involved an unreasonable application of clearly established federal constitutional law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### B. Ineffective assistance of counsel

In several sub-claims, petitioner contends he received ineffective assistance of counsel.

The proper standard for judging an ineffective assistance contention is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).  Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064.  An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.  A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91, 104 S. Ct. at 2066.  This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S. \_\_, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense.  To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  Specifically, to prove prejudice, a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998).  "Unreliability or unfairness does not result if the

ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law, and presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013). Since petitioner's ineffective assistance of counsel claims were adjudicated on the merits in the state habeas proceeding, the denial of relief is considered to have been based on a factual determination. Consequently, it will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). A state-court factual determination is not unreasonable merely because the federal court would have reached a different conclusion in the first instance. *Burt*, 134 S. Ct. at 15. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Canales v. Stephens*, 765 F.3d 551, 563 (5th Cir. 2014). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this

presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

### 1. Failure to consult with a forensic pathologist

In ground 2(1), Petitioner contends trial counsel did not consult with an independent forensic pathologist and did not request that the trial court appoint a forensic pathologist for petitioner. Petitioner claims a significant issue was whether Flores's injuries were caused by a knife or by broken glass. Petitioner asserts that if the injuries were caused by broken glass, such suggests Flores was accidentally injured.

To show ineffective assistance of counsel for failure to present a witness, petitioner must identify the witness, demonstrate the witness was available to testify, and set out the content of the witness's proposed testimony. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001); *see also Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir. 2002) (no relief where petitioner failed to present evidence of what a scientific expert would have stated).

Petitioner has not shown what a forensic pathologist's testimony would have been. Therefore, he has not shown deficient performance or prejudice for failure to request the appointment of a forensic pathologist. *See Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir. 2002). Petitioner has not shown that an appointed expert's opinion would have differed from Dr. Parsons's opinion. *See Scott v. Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991). Petitioner has not shown anything more than a mere possibility the assistance from an appointed expert would have benefitted him. *See Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993). Petitioner has not established deficient performance or prejudice, and he has not demonstrated that the state court's rejection of this sub-claim was unreasonable.

*2. Failure to object to hospital and medical records and to a recording of a 911 call*

In ground 2(2), petitioner contends counsel failed to raise a Confrontation Clause objection to Flores's hospital and medical records and to a recording of a 911 call placed by Sonia Murga, Flores's cousin who was at the house on the night of the incident. Petitioner asserts the doctors who created the medical reports and the 911 operator who took the 911 call should have been required to testify at trial.

The Confrontation Clause bars admission of testimonial statements of witnesses who do not appear at trial. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). "Testimony" means a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51. "Testimony" includes affidavits, depositions, prior testimony, and other statements made under circumstances that would lead an objective witness to believe that the statement would be available for use at trial. *Id.* at 51-52. For a statement to be testimonial, its primary purpose must be to prove past events potentially relevant in a later criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L.Ed.2d 224 (2006); *see also United States v. Duron-Caldera*, 737 F.3d 988, 992-93 (5th Cir. 2013).

Medical reports created for treatment purposes are not testimonial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). Petitioner has not shown that the medical reports were made for use at a later criminal trial.

Interrogations by 911 operators are not usually designed to primarily establish or prove a fact for use at trial; instead, 911 calls usually describe circumstances requiring police assistance. *Davis v. Washington*, 547 U.S. at 827; *United States v. Polidore*, 690 F.3d 705, 711 (5th Cir. 2012). Here, petitioner does not allege any facts regarding the recording of the 911 call that

would show it was testimonial and violative of the Confrontation Clause. Petitioner has not

shown any objection to the 911 call would have been meritorious. Petitioner has not shown

deficient performance or prejudice, and he has not shown the state court's resolution of this sub-

claim of ineffective assistance of counsel was unreasonable.

> *3. Failure to object to Dr. Parsons's use of photographs to determine the nature*
> *of the wounds; failure to object to Dr. Parsons's speculative testimony; failure to object to Dr.*
> *Parson's lack of qualifications; and failure to move to strike Dr. Parsons's testimony.*

> *Denial of due process because Dr. Parson's testimony was based on speculation and Dr.*
> *Parsons was not qualified to use photographs to determine the nature of the wounds.*

In grounds 2(3), 2(4), 2(8), 7, 8, and 9, petitioner contends he received ineffective

assistance of counsel and his due process rights were violated by Dr. Parson's testimony.

Petitioner asserts trial counsel should have objected to Dr. Parsons's testimony about the nature

and cause of the wounds based on the photographs of the wounds. He claims Dr. Parsons did not

examine Flores, and therefore Dr. Parsons could not testify about her injuries. Petitioner

maintains Dr. Parsons's testimony about the cause of the wounds was speculative. He also

argues counsel should have objected to Dr. Parsons's lack of qualifications as a prognosticator

and oracle and counsel should have moved to strike Dr. Parsons's testimony. Petitioner contends

counsel should have objected to the photographs, because they lacked probative value. He also

claims his due process rights were violated because Dr. Parsons's testimony was based on

speculation and he was not qualified to testify about injuries based on photographs.

Dr. Parsons, a forensic pathologist and medical doctor, has performed between 3,500 and

4,000 autopsies and has observed many types of wounds. (Dkt. 18-2) (Reporter's Record Vol. 6,

pp. 12-13). He testified about the wounds shown in the photographs and about how he could tell

what caused the wounds based on their appearance. (Dkt. 18-2 (Reporter's Record Vol. 6, pp.

13-19).  Petitioner has not alleged any facts showing Dr. Parsons was not qualified to determine the cause of the wounds based on their appearance in the photographs.  Petitioner has not shown Dr. Parsons's testimony was about matters which were not within his knowledge or ability as an expert witness, and petitioner has not shown the testimony was objectionable as a matter of state or federal law.  Additionally, petitioner has not shown the photographs were inadmissible. Generally, such photographs are admissible to show the nature and extent of the victim's wounds.  *See Madden v. State*, 799 S.W.2d 683, 697 (Tex. Crim. App. 1990).  Counsel did not render deficient performance by failing to make a frivolous objection to Dr. Parsons's testimony and to the admissibility of the photographs, and petitioner has not shown prejudice.  Petitioner has not shown the state court's rejection of these claims and sub-claims was unreasonable.

### 4.  Failure to introduce a prior recorded statement of the victim into evidence

In ground 2(5), petitioner claims counsel should have introduced a prior recorded statement Flores gave to the police into evidence.  Petitioner contends counsel's failure to do so resulted in a violation of the Confrontation Clause.  Petitioner further asserts the statement could have been used for impeachment.  Specifically, petitioner states Flores testified she did not see petitioner with a knife on the evening of the incident, but that she had said in her statement she saw a knife.  Flores also testified at trial she threw beer bottles at petitioner, but did not hit him over the head with a bottle.  However, in her statement Flores said she did hit petitioner on the head with a beer bottle.

Trial counsel submitted an affidavit in the state habeas corpus proceeding.  Counsel stated he considered introducing Flores's statement and using it in cross-examination, but concluded it would not assist the defense strategy and it could be detrimental to petitioner.

Defense counsel did question Flores about her prior statement. (Dkt. 18-2) (Reporter's Record Vol. 6, p. 42). Counsel asked if petitioner showed her a knife on the night of the incident, and Flores said he did not. *Id.* at 43. Counsel pointed out that Flores told the police that petitioner showed her a knife and that Flores described the knife to the police. *Id.* Flores admitted she thought she described the knife to the police, but she could not explain how she knew what the knife looked like if she never saw it. *Id.*

Defense counsel asked Flores if she threw beer bottles at petitioner, and she said she did. *Id.* at 49. Flores denied hitting petitioner over the head with a beer bottle. *Id.* at 49. Counsel asked Flores about telling the police she hit petitioner over the head with a beer bottle, but Flores again testified she threw the bottle at petitioner. *Id.* at 50. The following exchange then occurred:

| Defense counsel: | So it is possible that you don't remember hitting him over the head with a beer bottle? |
|---|---|
| Flores: | No, I remember doing that. That's the only way I could get away from him. |

*Id.* at 50.

Thus, defense counsel impeached Flores about the knife and about hitting petitioner with a bottle. Moreover, although Flores initially testified she did not hit petitioner over the head with a beer bottle, she then testified that she remembered doing it. It is not clear whether she meant she hit him with a thrown bottle or with a bottle she swung at him. Regarding the failure to introduce the entire statement, counsel averred he was concerned about detrimental matters in Flores's statement and made a strategic decision not to offer it. Petitioner has not shown trial counsel rendered deficient performance or that petitioner suffered prejudice. Petitioner has not

shown any Confrontation Clause violation.  He has not demonstrated that the state court's decision to reject this sub-claim was unreasonable.

### 5.  Failure to file a motion to suppress petitioner's statement and failure to review the statement

In ground 2(6), petitioner contends counsel did not file a motion to suppress the recorded statement petitioner made to the police and counsel did not review the statement.  Petitioner asserts counsel should have moved to suppress the statement because the risk of unfair prejudice outweighed its probative value.  Petitioner also claims he was not fully cognizant of his constitutional rights and he had not knowingly and willingly waived his Fifth Amendment rights. Petitioner complains the recording included discussions about outstanding warrants for petitioner's arrest.  Petitioner contends the story he gave in his statement was different from the version presented at trial as a defense.  He also claims the videotape showed him in an unfavorable light.

At trial, former police officer Tim Newman testified both outside the jury's presence and in front of the jury that before petitioner gave his statement to the police, Newman advised petitioner of his rights.  Newman specified the rights about which he informed petitioner.  (Dkt. 18-1) (Reporter's Record Vol 5, pp. 189-90, 192-93).

Petitioner does not allege the officer failed to give the proper warnings before petitioner made his statement.  Instead, petitioner claims he was not fully cognizant of his constitutional rights.  He does not explain, however, what he means in that regard, and he does not assert what, in particular, counsel should have raised in a motion to suppress.  Petitioner's conclusory claim cannot be the basis for habeas corpus relief.  *See Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009); *United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir. 2007); *Koch v. Puckett*, 907 F.2d

524, 529 (5th Cir. 1990). Regarding the effect of the statement on petitioner at trial, a defendant has no constitutional right to be protected generally from evidence that is unfavorable to him. Moreover, defense counsel did object to the introduction of the statement because it violated petitioner's Fifth Amendment rights, which the trial court overruled. (Dkt. 18-1) (Reporter's Record Vol 5, pp. 190-91). Petitioner has not shown that a motion to suppress would have been successful. Petitioner has not shown that trial counsel rendered deficient performance or prejudice in failing to file a motion to suppress, and he has not shown that the state court's decision to reject this sub-claim was unreasonable.

Petitioner also contends counsel failed to review the videotape. Petitioner relies on a part of the trial record he claims shows he had to tell counsel what was on the videotape. There was discussion in court about portions of the videotape containing extraneous offense evidence, which would not be admitted. Defense counsel stated he thought there was one part of the tape involving those matters, but petitioner then said there were several parts of the tape containing such discussions. (Dkt. 18-2) (Reporter's Record Vol. 5, p. 226). However, defense counsel also said the matters arose about one third of the way on the tape. *Id.* The trial court summarized an off-the-record discussion, stating the parties agreed to the portions of the tape that would have the volume turned off so the jury would not hear about pending cases, prior convictions, and outstanding warrants. (Dkt. 18-2) (Reporter's Record Vol. 6, p. 3). Thus, the record belies petitioner's claim that counsel did not review the videotape. Additionally, even if counsel did not review the videotape, petitioner does not allege how his trial or the result of the trial would have been different had counsel done so. Petitioner has not shown deficient performance or prejudice regarding reviewing the videotape, and he has not established that the state court's

rejection of this sub-claim was unreasonable.

### 6. Failure to object to evidence of flight

In ground 2(7), petitioner asserts counsel failed to object to evidence of petitioner's flight that was shown on a videotape from a police car camera. Police officer Kristi King testified she responded to a domestic dispute call at the scene where the incident occurred. On her way there, she saw a car matching a vehicle description that had been reported as being connected to the incident. The car was moving quickly and appeared to be fleeing. (Dkt. 18-1) (Reporter's Record Vol. 5, pp. 115-16). Officer King stopped the car and found petitioner YEBRA inside. Officer King knew EMS was arriving at the scene of the incident and feared for the safety of EMS personnel because petitioner had reported there might be someone with a knife at the scene. Officer King also thought petitioner could get treatment for his injuries from EMS at the scene. King then handcuffed petitioner, placed him in her patrol car and took him to the house where the incident occurred and where EMS would be present. *Id.* at 122. They arrived at the house, and King asked petitioner to remain in the car while she went inside the house. *Id.* at 123. King spoke with people at the house and when she returned to her car, petitioner had fled. *Id.* at 130-31. The videotape from the police car camera showed petitioner getting out of the car and running away. *Id.* at 136. Officer Tim Newman found petitioner later that morning in an alley, still wearing handcuffs. *Id.* at 185-86.

Petitioner argues that he fled because he had several outstanding warrants, as he told Officer Newman. He contends counsel should have moved to suppress the videotape of his fleeing.

The Texas Court of Criminal Appeals has explained the admissibility of evidence of

flight as follows:

> Evidence of escape from custody and flight is generally held to be admissible on the issue of guilt. *E.g., Gonzales v. State*, Tex.Cr.App., 492 S.W.2d 263; *Jackson v. State*, Tex.Cr.App., 454 S.W.2d 733; *Cawley v. State*, 166 Tex.Cr.R. 377, 310 S.W.2d 340, *cert. denied* 361 U.S. 920, 80 S.Ct. 266, 4 L.Ed.2d 188. Such evidence is admissible even though a defendant may be charged at the time with a number of offenses which are not related. *See People v. Curtis*, 7 Ill.App.3d 520, 288 N.E.2d 35 (Ill.App.1972); *Archie v. State*, 488 P.2d 622 (Okl.Cr.1971).

> We hold that to support admission of evidence of escape from custody and flight it must appear that the escape and flight has some legal relevance to the offense under prosecution. *Hicks v. State*, 82 Tex.Cr.R. 254, 199 S.W. 487. In order to have such evidence excluded, the burden then shifts to the defendant to show affirmatively that the escape and flight is directly connected to some other transaction and further show that it is not connected with the offense on trial. Escape and flight being evidence of a circumstantial nature, its admissibility is not conditioned on a showing that guilt is the only reasonable conclusion. *Cf.* 23 Tex. Jur. 2d, Evidence, Sec. 143. If the defendant offers evidence that the escape and flight may have sprung from some other cause, but its connection to the offense on trial remains a logical one, the evidence would still be admissible, the defensive evidence going only to the weight of evidence. *Cf. People v. Yazum*, 13 N.Y.2d 302 246 N.Y.S.2d 626, 196 N.E.2d 263 (1963).

*Hodge v. State*, 506 S.W.2d 870, 873 (Tex. Crim. App. 1974).

In the present case, the state court could have reasonably concluded the evidence of flight was admissible. Even if petitioner was concerned with outstanding warrants, which he claims was the reason for his flight, he was also in a police car at the scene of the incident, and his flight had a logical connection to the offense for which he was being tried. Under these circumstances, petitioner has not shown that an objection would have been successful. Therefore, petitioner has not established deficient performance or prejudice, and he has not shown the state court's rejection of this sub-claim was unreasonable.

### 7. *Failure to object that the prosecutor took Petitioner's videotaped statement home to edit*

In ground 2(9), petitioner asserts defense counsel failed to object to the act of the prosecutor in taking home petitioner's videotaped statement to edit. Petitioner does not allege what was edited from the tape when the prosecutor took it home. Instead, petitioner asserts the prosecutor and defense counsel edited the tape to exclude references to other crimes and bad acts. Petitioner claims the remainder of the tape was harmful to him and refuted his defense. Petitioner also appears to argue that had the extraneous matters not been edited out, the entire tape could have been kept from the jury.

The trial court instructed the prosecutor to edit out the discussions on the tape about matters that were not admissible. (Dkt. 18-2) (Reporter's Record Vol. 5, pp. 225-26). The prosecutor said he did not know how to do that and he did not have editing equipment. *Id.* at 226. Both attorneys and the judge decided that the sound would be turned off during the portions of the tape containing inadmissible material. *Id.* The next morning, the attorneys agreed on the portions of the tape that would have the sound turned off when played for the jury. (Dkt. 18-2) (Reporter's Record Vol. 6, p. 3-4).

Petitioner does not allege what was specifically edited out of the tape by the prosecutor. At the direction of the judge, inadmissible matters on the videotape were silenced and kept from the jury. Petitioner did not have a right to keep the jury from hearing the remaining relevant, admissible evidence on the tape, even if it was contrary to his defense. Petitioner has not shown there was any valid objection counsel should have made regarding the tape. Petitioner has not demonstrated deficient performance or prejudice, and he has not established that the state court's rejection of this sub-claim was unreasonable.

### C. A forensic pathologist was not appointed for petitioner

In ground 3, petitioner contends he should have been appointed a forensic pathologist to rebut Dr. Parsons's testimony. However, petitioner did not ask for such an appointed expert. Petitioner has not shown he had a constitutional right to have the trial court appoint an expert in the absence of a request from petitioner. Also, petitioner does not show what an appointed forensic pathologist's testimony would have been. *See Evans v. Cockrell*, 285 F.3d at 377-78; *Sayre v. Anderson*, 238 F.3d at 636. Petitioner has not established the state court's rejection of this claim was unreasonable.

### D. Use of recording of emergency telephone call and medical records and reports violated the Confrontation Clause

In ground 4, petitioner contends his rights under the Confrontation Clause were violated by the admission into evidence of medical records and reports and a recording of an emergency telephone call.[3] As explained in part B.2. above, petitioner has not shown the admission of this material into evidence violated the Confrontation Clause. Petitioner has not demonstrated the state court's rejection of this claim was unreasonable.

### E. Violation of Confrontation Clause when trial court did not permit defense counsel to impeach Flores

In grounds 5 and 6, petitioner claims the trial court did not permit defense counsel to

---

[3] Respondent argues that petitioner did not object to this evidence, so this claim is waived. If respondent means the claim is procedurally barred under the Texas contemporaneous objection rule, *see Styron v. Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001), respondent does not point out how the state court denied relief due to that procedural default. *See Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). The Court of Criminal Appeals denied the state habeas corpus application without written order, and the convicting court made no determination that this claim was procedurally defaulted. The issue was not raised on appeal, so there is no appellate court decision relying on procedural default. This is also a claim that could have been raised on appeal and thus could be procedurally barred under *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2005); *Ex parte Nelson*, 137 S.W.3d 666 (Tex. Crim. App. 2004). However, there is no indication the state court relied on that state rule of procedural default, either.

impeach the victim with her prior recorded statement that she hit petitioner over the head with a beer bottle. Specifically, he contends the trial court sustained the state's objection and disallowed further cross-examination of Flores with her prior statement. Petitioner contends this violated his right to due process and his rights under the Confrontation Clause.

Contrary to petitioner's claim, when the state objected to defense counsel's question about the prior statement, the trial court asked counsel to rephrase the question. (Dkt. 18-2) (Reporter's Record Vol. 6, p. 50). The trial court did not prevent counsel from impeaching Flores with her prior statement. Counsel did cross-examine Flores about her prior statements. *Id.* at 46-50. As previously noted, the following occurred:

> Defense counsel:    So it is possible that you don't remember hitting him over the head with a beer bottle?
>
> Flores:    No, I remember doing that. That's the only way I could get away from him.

*Id.* at 50. Thus, although Flores initially testified she did not hit petitioner over the head with a beer bottle, she then testified she remembered doing that. While it is not clear whether she meant she hit him with a thrown bottle or with a bottle she swung at him, petitioner has not shown defense counsel was not permitted to impeach Flores with her prior statement. He has not demonstrated the state court's rejection of this claim was unreasonable.

### F. Ineffective assistance of appellate counsel

In ground 10, petitioner claims he received ineffective assistance of appellate counsel for failing to raise an issue on appeal about the trial court's refusal to permit defense counsel to cross-examine and impeach Flores with her prior statement. Since, as discussed above, the trial court did not prohibit counsel from impeaching Flores, and defense counsel did impeach Flores,

appellate counsel did not render deficient performance by not raising a meritless ground. Petitioner has not shown deficient performance or prejudice, and he has not established the state court's rejection of this claim was unreasonable.

### G.  Cumulative effect of errors

In ground 11, petitioner contends his constitutional rights were violated by the cumulative effect of the errors in his trial.  For the reasons set out here, he has not shown there were errors. Consequently, there could be no cumulative effect of errors.  Petitioner has not shown the state court's rejection of this claim was unreasonable.

### H.  Violation of right to due process by amendment of the indictment

In ground 12, petitioner contends he was not tried for an offense presented in an indictment returned by a grand jury, because the indictment was amended.  The indictment originally alleged petitioner used "a deadly weapon, to wit: a knife."  Over two and one-half months before trial, the trial court allowed the state to amend to indictment to allege that petitioner used "a deadly weapon, to wit: a knife or some unknown object." *Yebra*, 2010 WL 3893684 at *12.

A state criminal defendant does not have a federal constitutional right to a grand jury indictment. *Wilkerson v. Whitley*, 28 F.3d 498, 502-03 (5th Cir. 1994) (citing *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884)); *see also Kerr v. Thaler*, 384 F. App'x 400, 402-03 (5th Cir. 2010).

Petitioner also contends the state was not required to specify the alleged object used to cause the wounds.  He asserts it is not possible to determine the manner or means by which an object has been used if the object is unknown.

The indictment alleged petitioner caused bodily injury to Flores "by cutting or stabbing with a knife or some unknown object." (Dkt. 17-5) (Clerk's Record p. 3). Therefore, petitioner was given notice of how the knife or the unknown object was used, to wit: to cut or to stab. Petitioner has not shown the state court's rejection of this claim was unreasonable.

### I. Motion to supplement - ineffective assistance of counsel for failure to request an instruction on lesser-included offenses of simple assault and deadly conduct

Petitioner filed a motion for leave to supplement, seeking to raise additional claims of ineffective assistance of counsel for failure to request jury instructions on the lesser-included offenses of assault and deadly conduct. (Dkt 33). The motion to supplement was denied. (Dkt. 35). The District Judge, however, remanded the matter for further consideration in light of *Trevino v. Thaler*, 569 U.S. ___ , 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013). (Dkt. 39). Respondent has responded to the motion and petitioner has replied. (Dkts. 45, 46).

In *Trevino v. Thaler*, the Supreme Court held that the Texas bar on successive or subsequent state habeas applications "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Trevino*, 133 S.Ct. at 1921 (citing *Martinez v. Ryan*, 566 U.S. ___ , 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012). The holding in *Martinez*, applied to Texas in *Trevino*, is an equitable ruling, not a constitutional ruling. *Martinez*, 132 S.Ct. at 1319-20.

Prior to *Trevino*, petitioner's new claims of ineffective assistance of counsel would have been procedurally barred, because petitioner would be precluded from raising them in a successive state habeas application. *See Ogan v. Cockrell*, 297 F.3d 349, 358 n.6 (5th Cir. 2002) (same under art. 11.071 for death penalty cases); *Horsley v. Johnson*, 197 F.3d 134, 137-38 (5th

Cir. 1999). Under *Trevino*, however, the fact that new claims of ineffective assistance of counsel would be barred under the state successive writ prohibition of Tex. Code Crim. Proc. art. 11.07, § 4, does not make the claims procedurally barred in this § 2254 case.[4]

Respondent argues the new claims are barred by the one-year statute of limitations in 28 U.S.C. § 2244(d).

Title 28 U.S.C. § 2244 states in relevant part:

(d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner argues the Texas system for raising ineffective assistance of counsel claims in post-conviction pleadings was an impediment created by the state in violation of the Constitution

---

[4] Petitioner's new claims would still be barred in a second state habeas corpus application under art. 11.07, § 4, even after *Trevino*. *See Ex parte Buck*, 418 S.W.3d 98 (Tex. Crim. App. 2013); *see also Ex parte Carpenter*, No. WR-49,656-05, 2014 WL 5421522 (Tex. Crim. App. October 8, 2014); *Ex parte Diaz*, No. WR-55,850-02, 2013 WL 5424971 (Tex. Crim. App. September 23, 2013); *Ex parte McCarthy*, No. WR-50,360-04, 2013 WL 3283148 (Tex. Crim. App. June 24, 2013). Therefore, a stay so petitioner could return to state court is not necessary under *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).

or laws of the United States. Petitioner also contends *Trevino* was a recognition of a new right by the Supreme Court. However, *Martinez*, on which *Trevino* was based, was an equitable ruling and was not a new rule of constitutional law. *Martinez*, 132 S.Ct. at 1319-20; *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). The Supreme Court did not hold that the Texas system for raising ineffective assistance of counsel claims was unconstitutional, and the Supreme Court did not establish a new constitutional right. Further, petitioner has not shown the factual predicate date of § 2244(d)(1)(D) applies. Instead, the date on which the judgment became final under § 2244(d)(1)(A) determines the beginning of the limitations period.

On direct appeal, petitioner did not file a petition for writ of certiorari. The judgment against him became final when the time for filing a petition for writ of certiorari expired, which was ninety days after the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir. 1998). The Court of Criminal Appeals refused petitioner's petition for discretionary review on March 16, 2011. *Yebra v. State*, PDR No. 1582-10 (Tex. Crim. App. March 16, 2011). The last day on which petitioner could have filed a petition for writ of certiorari was ninety days later, or on June 14, 2011. Therefore, the last day on which petitioner could have filed a § 2254 habeas corpus petition was June 14, 2012, unless Petitioner had a properly filed application for State post-conviction or other collateral review to toll the running of the limitations period. 28 U.S.C. § 2244(d)(2); *see Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998).

Petitioner filed a state application for writ of habeas corpus, and he stated he placed it in the prison mail system on June 13, 2012. .*Ex parte Yebra*, No. WR-78,088-01. The state writ application was denied on February 13, 2013. Thus, the limitations period was tolled for 245

days, including both June 13, 2012, and February 13, 2013. The new due date for the § 2254

petition was February 14, 2013.

Petitioner's § 2254 petition was filed on August 13, 2012, while his state habeas

application was still pending, and he claims to have placed his federal petition in the prison

mailing system on August 8, 2012. Petitioner's original § 2254 petition was timely.

However, petitioner did not raise his new claims of ineffective assistance of trial counsel

in his motion for leave to supplement until, at the earliest, November 21, 2013, when he states he

placed it in the prison mail system. This was after the limitations period expired.

A new claim raised in a later pleading may relate back to the original pleading and may

be timely based on the filing date of the original pleading. *Mayle v. Felix*, 545 U.S. 644, 654-65,

125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). The Fifth Circuit has explained:

> New claims of ineffective assistance of counsel do not automatically relate back
> to prior ineffective assistance claims simply because they violate the same
> constitutional provision. Rather, we must look to whether Gonzalez's new claim
> asserts "a new ground for relief supported by facts that differ in both time and type
> from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650,
> 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). If it does, then his proposed amendment
> does not relate back to his original pleading and is time-barred.

*United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009).

Petitioner's ineffective assistance of counsel claims in his original § 2254 petition did not

concern any failure to request a lesser-included offense instruction. Therefore, the new claims do

not relate back to the original petition and do not receive the benefit of the filing date of the

original federal petition. The timeliness of the new claims is dependent on when the new claims

were filed. Because the new claims were filed after the limitations period expired, they are

untimely and are barred by the statute of limitations.

The one-year limitations period can be equitably tolled in rare and exceptional circumstances. *Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000). Equitable tolling applies where the respondent actively misled the petitioner about the case, or where something extraordinary prevented petitioner from asserting his rights. *Phillips v. Donnelly*, 216 F.3d 508, 510-511 (5th Cir. 2000); *United States v. Patterson,* 211 F.3d 927 (5th Cir. 2000); *Molo v. Johnson*, 207 F.3d 773 (5th Cir. 2000). A petitioner's *pro se* status, lack of legal training, or ignorance of the law do not justify equitable tolling. *Felder v. Johnson*, 204 F.3d at 171-72.

The statute of limitations can also be overcome by a showing of "actual innocence." *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013). However, the actual innocence gateway is only available to a petitioner who presents "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

*Martinez* and *Trevino* do not provide a basis for equitable tolling of the statute of limitations. *Arthur v. Thomas*, 739 F.3d 611, 628-31 (11th Cir. 2014); *Hackney v. Stephens*, No. 4:14-CV-074, 2014 WL 4547816 at *2 (N.D. Tex. September 15, 2014); *Anacleto v. Stephens*, No. A-14-CA-394, 2014 WL 3012528 at *2 (W.D. Tex. July 2, 2014). Petitioner has not alleged facts to show he is entitled to equitable tolling.

Even if the Court could reach petitioner's new ineffective assistance of counsel claims, they lack merit. Petitioner contends counsel should have requested jury instructions on the lesser-included offenses of assault under Tex. Penal Code § 22.01and deadly conduct under Tex. Penal Code § 22.05. In Texas, there is a "two-step analysis for determining whether a

lesser-included-offense instruction should be given:  (1) Are the elements of the lesser-included

offense included within the proof necessary to establish the elements of the charged offense?  (2)

Is there evidence in the record that could allow a jury to find the defendant guilty of only the

lesser-included offense?"  *State v. Meru*, 414 S.W.3d 159, 161, 162 (Tex. Crim. App. 2013).

> [The first] step compares the elements of the offense as alleged in the indictment
> with the elements of the requested lesser offense.  An offense will be a
> lesser-included offense where "it is established by proof of the same or less than
> all the facts required to establish the commission of the offense charged."  Tex.
> Code Crim. Proc. Ann. art. 37.09(1).  To determine whether an offense qualifies
> as a lesser-included offense under this statute, we use the cognate-pleadings
> approach.  *Ex parte Watson*, 306 S.W.3d 259 (Tex. Crim. App. 2009) (op. on
> reh'g).  In *Watson*, we explained that
>
> > An offense is a lesser-included offense of another offense, under
> > Article 37.09(1) of the Code of Criminal Procedure, if the
> > indictment for the greater-inclusive offense either: 1) alleges all of
> > the elements of the lesser-included offense, or 2) alleges elements
> > plus facts (including descriptive averments, such as non-statutory
> > manner and means, that are alleged for purposes of providing
> > notice) from which all of the elements of the lesser-included
> > offense may be deduced.  Both statutory elements and any
> > descriptive averments alleged in the indictment for the
> > greater-inclusive offense should be compared to the statutory
> > elements of the lesser offense.  If a descriptive averment in the
> > indictment for the greater offense is identical to an element of the
> > lesser offense, or if an element of the lesser offense may be
> > deduced from a descriptive averment in the indictment for the
> > greater-inclusive offense, this should be factored into the
> > lesser-included-offense analysis in asking whether all of the
> > elements of the lesser offense are contained within the allegations
> > of the greater offense.

*Id.* at 273 (citations omitted).

> As stated in *Watson*, the elements of the lesser-included offense do not
> have to be pleaded in the indictment if they can be deduced from facts alleged in
> the indictment.  *Id.*  In this situation, the functional-equivalence concept can be
> employed in the lesser-included-offense analysis.  When utilizing functional
> equivalence, the court examines the elements of the lesser offense and decides
> whether they are "functionally the same or less than those required to prove the

charged offense." *McKithan v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010) (citing *Farrakhan v. State*, 247 S.W.3d 720, 722–23 (Tex. Crim. App. 2008)); *Jacob v. State*, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995).

*State v. Meru*, 414 S.W.3d at 162.  In *Watson*, the Court of Criminal Appeals explained it's use

of the "cognate pleadings" approach and not other approaches.

> In *Hall* [*v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007)], we recognized the "cognate pleadings" approach to determining lesser-included offenses, to the exclusion of other approaches such as the "strict statutory" and "cognate evidence" approaches.  Under the cognate pleadings approach, "the elements and the facts alleged in the charging instrument are used to find lesser-included offenses; therefore, the elements of the lesser offense do not have to be pleaded [in the indictment charging the greater inclusive offense] if they can be deduced from the facts alleged in [that] indictment."  In the strict statutory approach, which we rejected, "all of the statutory elements of the lesser offense [must be] contained within the statutory elements of the greater offense."  And in the cognate evidence approach, which we also rejected, "the court includes the facts adduced at trial in its lesser-included offense analysis."  Prior to *Hall*, our case law was somewhat conflicting, sometimes seeming to apply the strict statutory approach, other times the cognate evidence approach.  But in *Hall*, we definitively laid the conflict to rest when we construed Article 37.09(1) of the Code of Criminal Procedure to embrace the cognate pleadings approach, abandoning all other approaches.

*Ex parte Watson*, 306 S.W.3d at 271.

"[The second step] is a fact determination and is based on the evidence presented at trial.

If there is evidence that raises a fact issue of whether the defendant is guilty only of the lesser

offense, an instruction on the lesser-included offense is warranted, regardless of whether the

evidence is weak, impeached, or contradicted. *Cavasos* [*v. State*, 382 S.W.3d 377, 383 (Tex.

Crim. App. 2012)]." *State v. Meru*, 414 S.W.3d at 163.

Petitioner was convicted of aggravated assault under Tex. Penal Code § 22.02, which

makes it a crime if a person commits assault and the person "uses or exhibits a deadly weapon

during the commission of the assault."  The indictment alleged petitioner did "intentionally,

knowingly, or recklessly cause bodily injury to Darlene Flores by cutting or stabbing the said Darlene Flores with a knife or some unknown object, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or some unknown object, during the commission of said assault."

In arguing that assault was a lesser-included offense, Petitioner relies on the provision of the assault statute making it a crime if a person "intentionally, knowingly or recklessly causes bodily injury to another." Tex. Penal Code § 22.011(a)(1). He argues there was evidence that he hit and kicked Flores, causing bodily injury.

In arguing that deadly conduct was a lesser-included offense, Petitioner relies on the deadly conduct statute which makes it a crime if a person "recklessly engages in conduct that places another in imminent danger of serious bodily injury." Tex. Penal Code § 22.05(a). He asserts there was evidence that he engaged in a fist fight with Flores, which placed Flores in imminent danger of serious bodily injury by causing Flores to fall on or near a pile of beer bottles, which caused the stab wounds.

Petitioner's approach is the "cognate evidence" approach, which takes into account the facts adduced at trial in determining whether an offense is a lesser-included offense. However, as the Court of Criminal Appeals stated in *Watson*, that is not the approach used in Texas.

Instead, using the "cognate pleadings" approach, the question is whether assault or deadly conduct, as argued by petitioner, are lesser-included offenses of aggravated assault based on the elements and facts alleged in the indictment. The indictment alleged petitioner caused bodily injury by cutting and stabbing Flores with a knife or some unknown object and that petitioner used or exhibited a deadly weapon – a knife or an unknown object – during the assault.

Petitioner contends his criminal actions for assault and deadly conduct consisted of hitting Flores with his fists. Under Texas law, the criminal action of hitting with fists cannot be a lesser-included offense of cutting and stabbing with a knife or some unknown object. *See Irving v. State*, 176 S.W.3d 842, 845-46 (Tex. Crim. App. 2005) (assault by grabbing the victim and falling on top of her is not a lesser-included offense of aggravated assault by hitting the victim with a baseball bat); *Hayward v. State*, 158 S.W.3d 476, 479-80 (Tex. Crim. App. 2005) (defendant claimed she hit victim but that someone else stabbed the victim; the court held that assault by hitting with fists is not a lesser-included offense of murder by stabbing with a knife or piece of glass). Additionally, there was no evidence that Flores stabbed herself several times by rolling over broken beer bottles. Petitioner has not shown he was entitled to instructions on assault or deadly conduct as lesser-included offenses. Therefore, petitioner has not shown deficient performance or prejudice because of counsel's failure to request those lesser-included offense instructions. Because the claims raised in petitioner's motion to supplement are barred by the statute of limitations, leave to file the motion to supplement should be denied. Alternatively, even if the claims were not barred by limitations, they are without merit.

V.
RECOMMENDATION

Petitioner's motion for leave to supplement, (Dkt. 33), should be DENIED and petitioner has failed to present any cognizable or meritorious claim in the federal petition on file which warrants federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner JAVIER YEBRA be DENIED.

VI.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___23rd___ day of February, 2016.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).